PUFFER v. AMERICAN RAILWAY EXPRESS CO.

1. CARRIERS — SPECIAL CONTRACT — BREACH — LIABILITY—EXPRESS COMPANIES.

Where a common carrier makes a special agreement to deliver goods within a specified time he is liable for failure to perform whatever the cause, and it is immaterial that he would not have been liable under the law applicable to common carriers, in the absence of the specific contract.

2. SAME—RELEASE.

Where an express company violated its specific contract to deliver berries within a specified time, the fact that the shipper later, in order to minimize his damages, reshipped them to another point, would not release the express company from liability for its breach of the contract.

3. APPEAL AND ERROR—MEASURE OF DAMAGES — APPELLANT MAY NOT COMPLAIN OF FAVORABLE INSTRUCTIONS.

Defendant may not complain of an instruction as to plaintiff's measure of damages which was more favorable to defendant than it was entitled to.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted October 11, 1922. (Docket No. 80.) Decided December 29, 1922.

Assumpsit by Earl W. Puffer against the American Railway Express Company for breach of a contract for the transportation of certain berries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Thomas J. Cavanaugh,* for appellant.

*L. J. Lewis* (*W. J. Barnard,* of counsel), for appellee.

Plaintiff is engaged in buying and shipping produce at Bangor in Van Buren county on the line of the Pere Marquette. The 13th of June, 1920, was on Sunday. All the Pere Marquette trains on that division did not run on Sunday, but train No. 1, on which defendant had an express car, passed that station daily at 3:49 in the morning. The strawberry season was then on and on Saturday, the 12th, plaintiff had arranged with a Grand Rapids firm to ship it 100 crates of strawberries provided they would reach Grand Rapids Monday morning. Plaintiff consulted defendant's agent at Bangor, who was also station agent for the railway, with reference to having No. 1 stop and shipping these berries on that train. He explained to the agent the situation. There was also a train during the night in the other direction which arrived in Chicago early in the morning. The agent advised plaintiff that he would call headquarters to ascertain if the train would stop. Later he informed plaintiff that he had done so and that the train would stop for 10 or 15 minutes and take on the berries. Plaintiff offered to furnish help to load the berries but was assured and reassured by the agent that he had sufficient help. The agent made a similar arrangement with another shipper who, however, came down to the train bringing his men with him and they, acting with defendant's agent and his help, succeeded in loading into the express car 469 crates of his berries when the train pulled out, leaving plaintiff's berries and 10 crates of the other shipper's berries standing on the platform. There was ample room in the express car for the balance of the berries.

Monday forenoon plaintiff learned that the berries had not been shipped. He also learned that while the early Grand Rapids market was fairly strong it had fallen off. He telephoned Chicago and other markets to find a place to dispose of the berries. Part

of the day he was out in the country buying produce. While away his wife was in charge of his office. Defendant's agent saw her several times about the shipment and at his suggestion she wrote and signed her husband's name to an order to hold the berries. Plaintiff finally decided that Chicago was the best market, surrendered his bill of lading or receipt and shipped the berries on the early morning train going there. He brings this action to recover his loss counting on the special contract. The case was submitted to the jury on the theory that defendant was liable only for negligence in the shipment. Plaintiff recovered a judgment for $283, a substantial amount less than his claim, and defendant brings the case here for review.

FELLOWS, C. J. (*after stating the facts*). Defendant does not question the authority of its agent at Bangor to make the special contract relied upon by plaintiff, nor does it question its validity; therefore, no discussion of these questions is necessary. Upon this record and for the purposes of this case we may assume authority to make the contract and validity of it if made. A careful reading of the testimony of Mr. Todd, defendant's agent, called under the statute for cross-examination, and the testimony of Mr. Puffer, is convincing that there is no substantial dispute as to the making of the special contract. The testimony of both witnesses establishes it. That it was breached is beyond question. That the breach occurred at Bangor is evident. Under these circumstances we must lay aside the arguments advanced in the brief of defendant's counsel dealing with the liability of a common carrier in the absence of a specific contract. In 4 R. C. L. p. 739, it is said:

"Where, however, the carrier has made an express contract to carry and deliver goods within a specified time, he is bound to fulfill his contract; nothing will

excuse him, and he is liable for any delay, no matter from what cause it may have arisen. This result follows logically from the well-settled rule that where the law creates a duty or charge, and the party is disabled from performing it without any default in himself, and has no remedy over, the law will excuse him; but where the party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident or delay by inevitable necessity, because he might have provided against it by contract."

Defendant's counsel also insists that plaintiff by the act of taking possession of the berries and shipping them to Chicago released defendant. This contention can not be sustained either as matter of fact or as matter of law under the facts. Defendant's agent was insistent that plaintiff take the berries and give up the receipt or bill of lading. He visited plaintiff's office several times in his endeavor to accomplish this and finally succeeded in getting plaintiff's wife to sign her husband's name to an order to hold the berries, the language of which order was dictated by him. The breach of the contract had then occurred; the damage had been then done. Plaintiff in an endeavor to minimize his damages sought to dispose of the berries. He telephoned two houses in Grand Rapids but after the early market the price then run down. Plaintiff also tried to dispose of the berries in Kalamazoo, in South Haven, to truckmen running through Bangor, and in Chicago. The latter place was deemed the most available and they were shipped there. Neither under the facts nor the law was defendant released from the damages already done, nor was there any consideration for such a release, nor was release pleaded by defendant. The trial court did not err in declining to direct a verdict for defendant.

The trial judge instructed the jury that if plaintiff was entitled to recover they should assess his damages at the difference between the market value of

the berries at Bangor and what he received in a good faith effort to minimize his loss. We do not perceive that defendant was prejudiced by this instruction or by the fact that the Bangor market was named. Had defendant performed its contract and delivered the berries in Grand Rapids for the early market plaintiff would have received $4.75 a case for them. The market price in Bangor was considerably less. Plaintiff was shipping the berries for the early Grand Rapids market and defendant's agent was so advised. The early Grand Rapids market for which the berries were consigned was strong although it fell off later in the day. Taking the charge as a whole we are persuaded that it was more favorable to defendant than it was entitled to.

We have examined the assignments of error dealing with the admission of evidence but find no reversible ruling in any of the errors assigned.

The judgment will be affirmed.

WIEST, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.